In the Matter of ERIC J. FRANK et al., Petitioners, v. DEPARTMENT OF STATE OF THE STATE OF NEW YORK et al., Respondents.

Third Department, August 1, 1961.

*Irving I. Waxman* for Kalman Klein, petitioner.

*Goldstein, Judd & Gurfein (Orrin G. Judd, Murray I. Gurfein, Robert J. Haft* and *Edward A. Bernstein* of counsel), for Eric J. Frank and others, petitioners.

*Louis J. Lefkowitz, Attorney-General (Herman F. Nchlsen* and *Paxton Blair* of counsel), for respondents.

*Per Curiam.* This is an article 78 review of a determination by the Secretary of State denying renewal of petitioners' licenses as real estate brokers after a hearing pursuant to section 441-e of the Real Property Law. The refusal to renew petitioners' licenses is based on their alleged '' demonstrated untrustworthiness  *  *  *  to act as a real estate broker '' (Real Property Law, § 441-c, subd. 1). The petitioners, all licensed real estate brokers operating primarily in Queens County, combined with others into syndicates for the purpose of acquiring vacant land for resale in Suffolk County. On April 6, 1955, Sykale Homes, Inc., one of the syndicates, acquired a parcel of land known as the Leeds property in the Town of Brookhaven for the sum of $87,381. On August 5, 1954, the Ashburn-Selden Corp., another syndicate, acquired a 188-acre parcel in the Town of Brookhaven for $84,600. On June 7, 1955, Selden Land Corp., a third syndicate, acquired a 37-acre parcel also in the Town of Brookhaven known as the Demare parcel for $37,740. The immediate objective of these syndicates after acquisition of the property was to obtain a down zoning and thus greatly enhance the resale value. For the purpose of effectuating this end one Paul Silverstein, a practicing attorney and president of the Sykale syndicate, contacted Kensen D. Merrill an attorney and

Justice of the Peace in the Town of Brookhaven. Merrill by virtue of his position as Justice of the Peace was also an ex officio member of the Town Board to which the rezoning applications would be submitted (Town Law, § 60, subd. 2), a fact which all of the petitioners and Silverstein deny having been aware of at the time of Merrill's retention as counsel. Silverstein testified that it was his practice in such situations to retain local counsel to take charge of the rezoning applications because their local contacts and acquaintances could be used to dilute any opposition to the proposed rezoning. Silverstein stated that he had met Merrill at a luncheon in New York City for the first time and in the course of the conversation learned that Merrill practiced in Brookhaven and handled zoning matters. Thereafter Silverstein and Merrill met and discussed fees. Merrill informed Silverstein that he would not share his fee, but would make arrangements directly with the client and that Silverstein should look to the client for any fee he expected. Subsequently Silverstein recommended to one Silbert, another member of the syndicates, that they should retain Merrill. Silverstein and Silbert both went to Port Jefferson and visited the firm of Merrill & Merrill. Silbert met privately with Merrill, Silverstein remaining in another room. As a result of this discussion Silbert reported to the syndicate members, including petitioners, proposed fees for Merrill of $5,000 for the Leeds parcel and $8,800 for the 188-acre parcel contingent upon approval for rezoning being obtained from the Town Board. After the ultimate approval was obtained these fees were split and paid by checks as follows: For the Leeds parcel $3,500 to Merrill and $1,500 divided between two of his office assistants; for the 188-acre parcel $7,500 to Merrill and $2,500 divided among three of his office assistants (for a total of $10,000 on the 188-acre parcel rather than $8,800). The explanation for this division of fees was that Merrill requested it since these assistants did investigation work to determine the sentiments of the people in the area affected by the proposed rezoning and to win over any objectants.

Petitioner Klein also met with Merrill in his law office in a discussion relative to the rezoning of the Leeds property. Merrill requested that one of the syndicate members appear on the return date of the petition and present it to the Town Board. Ultimately Klein did appear and made a brief oral presentation in support of his petition. He testified that he saw Merrill walking around in the audience portion of the hearing room and that he spoke briefly to him concerning the length of the hearing. Klein denies that he saw Merrill seated with the rest of the board members at any time. Silbert appeared before the board

in behalf of the 188-acre application. He also saw Merrill there, but not seated with the board although he did see him in the clerk's area which is back of the railing separating the audience part of the room.

Merrill participated with the board in their deliberations and voted affirmatively on each of those applications which were approved. (The petition for the Demare parcel was ultimately denied, no member of the syndicate appearing in support of it. It also appears that no arrangement with Merrill had been made concerning this property, however.) As a result Sykale sold the Leeds property for $311,625, realizing a profit of $224,244. Ashburn-Selden had conveyed the 188-acre parcel to Silbert and Taubin (a petitioner herein) who resold it after the rezoning for $369,113.75, realizing a profit of $284,513.75. It is acknowledged by petitioners that the intermediate conveyance to Silbert and Taubin in no way affected their interests.

On August 27, 1959, a Suffolk County Grand Jury handed down an indictment against Merrill accusing him of accepting a bribe as a public officer in violation of section 372 of the Penal Law. This indictment included accusation that the $5,000 and $10,000 fees paid for work on the Leeds property and the 188-acre parcel respectively constituted bribe money. Merrill pleaded guilty to these charges and received a suspended sentence and a fine. He died before the present proceeding.

At the hearing it was also elicited that Merrill, who was constantly referred to as " Judge ", always sat to the immediate right of the Supervisor whose seat was located at the center of the board table and that name plates for each board member were situated in front of each member's place facing the audience. It also developed that Silbert had been to an earlier Town Board meeting at which Merrill had participated as a board member. Silbert claimed, however, that he did not remember Merrill.

The above facts are not disputed by petitioners. They contend, however, that said facts do not support the conclusion of the hearing examiner that they were aware that Merrill was a member of the board and that therefore the administrative determination is without sufficient foundation since a finding of untrustworthiness must be predicated on mens rea. Admittedly there is no direct evidence to demonstrate such knowledge but such is often the case where lack of knowledge is relied on as a defense. It is well settled, however, that knowledge and intent can be properly inferred from the evidence presented (People v. Flack, 125 N. Y. 324; 2 Wigmore, Evidence [3d ed.], § 245, p. 42). " The state of mind of a person, like the state

or condition of the body, is a fact to be proved like any other fact when it is relevant to an issue in a case * * * Direct evidence of one's state of mind or of the belief which induced an act is not, however, necessary. A condition or state of mind may be shown by the accompanying circumstances as well as by the direct testimony of the party himself." (20 Am. Jur., Evidence, § 335, p. 312.) " Knowledge may be established by proof of facts and circumstances warranting inference thereof by the jury " (*Id.* § 336, p. 313). " The motive or intent with which an act is done, where material, is generally a matter of inference depending on the nature of the act and the circumstances surrounding its commission * * * Intent may be proved by facts and circumstances which characterize the transaction and from which the existence of intent may reasonably be inferred." (*Id.* § 337, pp. 313, 314.)

In reviewing this determination under subdivision 7 of section 1296 of the Civil Practice Act we must decide if the determination has the support of substantial evidence. In *Matter of Stork Restaurant* v. *Boland* (282 N. Y. 256) a proceeding brought pursuant to section 707 of the Labor Law the court at page 267 states the rule applicable to the instant case: " Where there is conflict in the testimony produced before the Board, where reasonable men might differ as to whether the testimony of one witness should be accepted or the testimony of another witness be rejected, where from the evidence either of two conflicting inferences may be drawn, the duty of weighing the evidence and making the choice rests solely upon the Board. The courts may not weigh the evidence or reject the choice made by the Board where the evidence is conflicting and room for choice exists. And further (pp. 273–274) : " A finding is supported by the evidence only when the evidence is so substantial that from it an inference of the existence of the fact found may be drawn reasonably. A mere scintilla of evidence sufficient to justify a suspicion is not sufficient to support a finding upon which legal rights and obligations are based * * * The same test is applied in trials before a court and jury. Evidence which is sufficient to require the court to submit a question of fact to a jury is sufficient to support a finding by the administrative board." In the type of disciplinary proceeding we have here the courts, while not discarding the view of the board's administrative discretion, have been more critical of the administrative procedure. (*Matter of Phinn* v. *Kross,* 8 A D 2d 132; *Matter of Stammer* v. *Board of Regents,* 287 N. Y. 359; *Matter of Okun,* 285 App. Div. 993, affd. 309 N. Y. 939; *Matter of Erin Wine & Liq. Store* v. *O'Connell,* 283 App. Div. 443, affd. 307 N. Y. 768;

*Matter of Goldman,* 253 App. Div. 862; *Matter of Pendergrast,* 245 App. Div. 792.) Nevertheless in the instant case we cannot say as a matter of law that an inference of guilty knowledge could not properly be drawn from the facts and circumstances laid before the administrative tribunal. The arrangements with Merrill and the processing of the applications for down zoning were atypical and never satisfactorily explained by petitioners. In such a case as is presented here where admittedly shrewd businessmen stand to make an enormous profit on their investment, to contend and assert that they would not be well aware of the qualification and connections of the attorney to whom they were entrusting such a venture is not readily believable. While Merrill's conviction on the very circumstances here involved does not itself prove petitioners' knowledge, it establishes the dishonesty of the transaction against which all of the other facts presented must be appraised. Petitioners urge that their payment by check negates any inference of wrongdoing. In addition to this being only one factor among many involved in this case, it is equally inferable that they made a slip of the type providing the undoing of many a criminal venture.

The administrative review here is not unlike that involved in *Matter of Ray* v. *Board of Regents* (9 A D 2d 560). There a physician's license was suspended on the charge that he issued narcotics and prescriptions for same not in good faith. The evidence established that he had dispensed the narcotics to an addict rather than to a bona fide patient, but he protested that he had been completely taken in by the addict who cleverly feigned a genuine illness and that his dispensation of the drugs was in entire good faith. This court, noting that all the circumstances should have anprised the physician of the true nature of his "patient" refused to upset the determination. Despite the physician's protestations against bad faith, of which there was no direct evidence, the rest of the evidence was supportive of that inference.

The determination should be confirmed, with $50 costs.

BERGAN, P. J., GIBSON, REYNOLDS and TAYLOR, JJ., concur.

Determination confirmed, with $50 costs.